**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SANITARY BAG & BURLAP COMPANY, Inc. and Panhandler, Inc., Respondents.**

**No. 18313.**

United States Court of Appeals
Sixth Circuit.

Feb. 4, 1969.

---

William H. Carder, Atty., N. L. R. B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, William Wachter, Atty., N. L. R. B., Washington, D. C., on brief.

William E. Fortas, Memphis, Tenn., for respondents; Fortas & DeHart, Memphis, Tenn., on brief.

Before EDWARDS, CELEBREZZE and PECK, Circuit Judges.

PER CURIAM.

The National Labor Relations Board seeks enforcement of its order issued February 15, 1967, against Sanitary Bag & Burlap Company and Panhandler, Inc.[1] (Respondent). The Board found § 8(a) (1) and 8(a) (3) violations of the National Labor Relations Act[2] by the conduct of the Respondent both before and after the United Furniture Workers of America, Local 282 AFL–CIO (Union) won the consent election in September 1965. The Board's decision and order are reported at 162 NLRB No. 151.

The Board found that Respondent violated 8(a) (1) by interrogating employees and surveillance of their activities, by threatening employees with plant shutdown and loss of benefits if the Union prevailed and with discharge if they went on strike, by abrogating a Christmas bonus, by withdrawing an hourly or "Thank You" bonus, by commenting to employees that the company work rules were linked with the Union contract, and by adopting a discriminatory work rule (Rule 5). The Board

---

1. The Board found that the two companies were a single integrated enterprise and therefore a single employer under the Act.

2. 29 U.S.C. §§ 158(a) (1) and (3).

also found that Respondent violated 8(a) (3) and (1) by discharging or suspending 14 employees for violations of company Rule 5 and by discharging three employees for the Union affiliation.

■ In our consideration of the Board's findings, we note that with respect to questions of fact, the Board's findings shall be conclusive if supported by substantial evidence on the record considered as a whole, Section 160(e), Title 29, U.S.C.; Universal Camera Corporation v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and that the Board's inferences drawn from alternative ones or its choice between two conflicting views may not be set aside even though another conclusion might appear more plausible and reasonable to the court (N. L. R. B. v. Challenge-Cook Brothers, Inc., of Ohio, 374 F.2d 147, 152 (6th Cir. 1967)), or would have made a different choice of the views presented had the matter been before the court de novo (N. L. R. B. v. Bendix Corporation, 299 F.2d 308, 310 (6th Cir.), cert. denied 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed.2d 65 (1962)).

■ We are of the opinion that there was sufficient evidence in the record to substantiate the findings of the Board that Respondent's conduct was in violation of both 8(a) (1) and 8(a) (3) of the Act in all respects as heretofore mentioned, except to that part of the Board's order dealing with the company Rule 5 and with the discharges or suspensions of the 14 employees that followed as a result of their violation of that rule.

The Union contract provided the right for the Respondent to adopt working rules. The rules were not totally new, with the exception of Rule 5, since the Board found them to be in effect previously as unwritten rules or practices. Rule 5 required employees either to obtain a supervisor's permission before leaving their assigned place of work or if a supervisor was not present, to leave and advise the supervisor of their absence later. Prior to Rule 5 and to the Union contract that granted employees two rest periods, the employees were able to leave their stations during the day without obtaining permission, except for the half-hour periods before noon and before quitting time.

The Board found that Rule 5 was discriminatory and more than a work rule and that Respondent promulgated it in retaliation for the employees' vote in the election. The Board relied on several supervisors' statements to the effect that the employees brought the rule on themselves because of their Union selection. The Board also found that the discharges or suspensions of the 14 employees arose out of their violation of this rule. The order of the Board required Respondent to revoke and rescind Rule 5 and offer reinstatement and backpay to the 14 affected employees.

■ We recognize that the Act prohibits changes in employee working conditions if they are tantamount to a retaliatory penalty for the employees' exercise of protected rights (see N. L. R. B. v. Plastilite Corporation, 375 F.2d 343 (8th Cir. 1967); N. L. R. B. v. Dixie Gas, Inc., 323 F.2d 433 (5th Cir. 1963); Butcher Boy Refrigerator Door Company v. N. L. R. B., 290 F.2d 22 (7th Cir. 1961); Winter Garden Citrus Products Cooperative v. N. L. R. B., 238 F.2d 128 (5th Cir. 1956)). However, in negotiation of the union-management contract, which apparently was accomplished with hard bargaining, the Union won a ten minute morning and afternoon rest period. Management won the right to initiate and put into effect rules for employees. In such circumstances and on the record taken as a whole we conclude that the Board's decision on this point is not supported by substantial evidence and will not be enforced.

Enforcement is denied as to that part of the Board's order which concerns the company Rule 5 and the employees discharged or suspended for its violation; the remainder of the order will be enforced.