**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 13, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATIONAL LABOR RELATIONS
BOARD,

        Petitioner,

    v.

KING SOOPERS, INC.,

        Respondent.

Nos. 06-9514, 06-9518

---

**ON APPLICATION FOR ENFORCEMENT OF AN ORDER
OF THE NATIONAL LABOR RELATIONS BOARD
(Agency No. 27-CA-16902-1)
(Agency No. 27-CA-16934)**

---

Patrick R. Scully (William A. Wright, Sherman & Howard, L.L.C., Denver, Colorado,
and Raymond M. Deeny, Sherman & Howard, L.L.C., Colorado Springs, Colorado, with
him on the briefs), Sherman & Howard L.L.C., Denver, Colorado, appearing for
Respondent.

Amy Ginn, Attorney (Jill A. Griffin, Supervisory Attorney, Ronald Meisburg, General
Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate
General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, with her
on the brief), National Labor Relations Board, Washington, D.C., appearing for
Petitioner.

---

Before **TACHA**, Chief Circuit Judge, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

The National Labor Relations Board ("NLRB" or "Board") petitions for enforcement of two June 2005 Orders, 344 N.L.R.B. No. 103 (2005) and 344 N.L.R.B. No. 104 (2005), issued against Respondent King Soopers, Inc. ("King Soopers"). The Board concluded King Soopers violated the National Labor Relations Act ("NLRA") by failing to provide documents and information in response to requests from two separate unions—the United Food and Commercial Workers, Local No. 7 ("UFCW" or "Local 7"), Case No. 06-9514, and the Paper Allied Industrial Chemical Energy Workers International Union, Local 5-920 ("PACE"), Case No. 06-9518. King Soopers does not contest the content of the Board's Orders but does oppose enforcement by this Court. Exercising jurisdiction under 29 U.S.C. § 160(e), we order enforcement of the NLRB's Orders.

## I. BACKGROUND

On July 26 and December 29, 2000, the General Counsel for the NLRB issued unfair labor practice complaints against King Soopers based on charges filed by UFCW and PACE, respectively. The complaints alleged King Soopers violated subsections 8(a)(1) and (5) of the NLRA, 29 U.S.C. § 158(a)(1), (5), by failing to provide to the unions requested information relevant to the processing of several grievances and necessary to the unions' roles as the collective bargaining representatives of certain King Soopers employees.

On May 22, 2001, the Board's Administrative Law Judge ("ALJ") issued a

-2-

recommended Decision and Order in each case, concluding King Soopers unlawfully failed to provide certain requested information to the unions in violation of the NLRA. *See* 344 N.L.R.B. No. 103, at 4; 344 N.L.R.B. No. 104, at 8. In both cases, the NLRB General Counsel requested a "broad, companywide remedy" based on its assertion that King Soopers had a history of repeated violations of its duty to furnish information; the ALJ, however, rejected these requests and recommended "narrow" orders addressing only the specific complaints regarding King Soopers' obligations with respect to the two unions.

The ALJ's recommended orders required King Soopers to "[c]ease and desist" from (a) refusing to bargain with the unions as the duly designated representatives of its employees by refusing to provide necessary and relevant information concerning union employees, and "(b) [i]n any like or related manner, interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the [NLRA]." *See* 344 N.L.R.B. No. 103, at 4; 344 N.L.R.B. No. 104, at 8. Both the General Counsel and King Soopers filed exceptions to the ALJ's recommendations.

The Board largely affirmed the ALJ's findings in the final Orders issued June 17, 2005, which adopted the recommended cease and desist orders as provided by the ALJ. *See* 344 N.L.R.B. No. 103, at 1; 344 N.L.R.B. No. 104, at 1. The NLRB applied for enforcement of its Orders in this Court on February 7 and 8, 2006.

## II. DISCUSSION

This Court has authority to enforce NLRB orders under section 10(e) of the

NLRA, 29 U.S.C. §160(e). "We will grant enforcement of an NLRB order when the agency has correctly applied the law and its findings are supported by substantial evidence in the record as a whole." *NLRB v. Velocity Express, Inc.*, 434 F.3d 1198, 1201 (10th Cir. 2006) (quotation omitted). If the Board's order is justified, it is "entitled to have it enforced" as a means of ensuring that the conduct will not be repeated in the future. *NLRB v. Raytheon Co.*, 398 U.S. 25, 28 (1970).

Court enforcement of a Board order is not a foregone conclusion, however, merely because, as here, the employer does not contest the Board's legal conclusions or factual findings. We may decline to enforce an order of the Board if we determine it would be inequitable to do so. *See Continental Web Press, Inc. v. NLRB*, 742 F.2d 1087, 1095 (7th Cir. 1984). As such, enforcement is subject to some of the traditional defenses to requests for equitable relief. *See id.* For example, courts may decline to enforce a Board order if there is unreasonable delay in seeking enforcement (laches), *see id.*; *NLRB v. Norfolk Shipbuilding & Drydock Corp.*, 172 F.2d 813, 815 (4th Cir. 1949); or if the court determines that enforcement is "both unnecessary and obsolete," *see NLRB v. Greensboro News & Record, Inc.*, 843 F.2d 795, 798 (4th Cir. 1988).

In addition, courts must not "rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying the statute." *NLRB v. Brown*, 380 U.S. 278, 291 (1965). In other words, this Court will not enforce the order if "the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the

[NLRA]." *NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 347 (1953) (quotation omitted); *see also NLRB v. Bartlett-Collins Co.*, 639 F.2d 652, 655 (10th Cir. 1981) (explaining this Court will deny enforcement when orders are "'fundamentally inconsistent with the structure of the act,' or 'attempt to usurp major policy decisions properly made by Congress'"). On the other hand, if the Board's action is "reasonably defensible, it should not be rejected merely because the courts might prefer another view of the statute." *Bartlett-Collins*, 639 F.2d at 655.

It is not inequitable here to enforce the Board's Orders against King Soopers. King Soopers does not argue that the NLRB has unreasonably delayed seeking enforcement. Nor is this a case in which enforcement of the Board's Orders will be pointless or obsolete. Courts have held enforcement is unnecessary or futile where, for example, the employer has gone out of business, *see Brockway Motor Trucks v. NLRB*, 582 F.2d 720, 740 (3d Cir. 1978); the employer has sold the business to a successor company who has independently taken action to correct each of the predecessor company's violations, *see NLRB v. Maywood Plant of Grede Plastics*, 628 F.2d 1, 7 (D.C. Cir. 1980); significant time has passed between the violation and enforcement such that the facts on which the order is based are questionable or of no use, *see C-B Buick, Inc. v. NLRB*, 506 F.2d 1086, 1096 (3d Cir. 1974); *NLRB v. Eanet*, 179 F.2d 15, 21 (D.C. Cir. 1949); or personnel changes have eliminated any threat of a recurrent violation, *see Greensboro News*, 843 F.2d at 799. Unlike these cases, the factual circumstances surrounding the original dispute between King Soopers and the unions have not changed

in any material fashion such that enforcement is obsolete. Instead, King Soopers suggests that its compliance with the Board's Orders renders enforcement unnecessary. Mere compliance with a Board order, however, does not "depriv[e] the Board of its opportunity to secure enforcement." *NLRB v. Mexia Textile Mills*, 339 U.S. 563, 567 (1950) (discussing mootness). "A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree." *Id.*

King Soopers' remaining arguments that enforcement would contravene the policies and purpose of the NLRA are unpersuasive. The cease and desist Orders in question here prevent King Soopers from withholding necessary and relevant information from the specific unions and prohibits King Soopers in "any like or related manner" from "interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them" by the Act. King Soopers argues that the Board's enforcement action here seeks to expand the scope of the Orders and thereby contravenes the purposes of the Act by enabling the Regional Director to threaten contempt proceedings in the event of any subsequent allegation that King Soopers failed to provide relevant and necessary information to the unions and by bypassing the administrative process.

It is clear, however, that seeking contempt proceedings for subsequent similar violations is an action legally within the scope of the Order as defined in *NLRB v. Express Publ'g Co.*, 312 U.S. 426 (1941). The Supreme Court held in *Express Publishing Co.* that the mere fact that a court finds an employer has violated the NLRA

does not justify an injunction "broadly to obey the statute." *See id.* at 435. Congress did not contemplate that the Board would obtain broad orders so it could thereafter try dissimilar or unrelated violations of the Act through contempt proceedings. *Id.* Having found the employer's acts which constitute an unfair labor practice, however, the Board is "free to restrain the practice and other *like or related* unlawful acts." *Id.* at 436 (emphasis added). It is a "salutary principle" that we may enjoin the "same type or class" of unlawful acts as those the party has unlawfully committed. *Id.* at 435–36. Therefore, the NLRB may restrain employer acts similar to those found to be unfair labor practices and contempt is an appropriate remedy; placing this Court's authority behind the Orders is not contrary to the Act. *See Mexia Textile Mills*, 339 U.S. at 567–68 ("[N]o more is involved than whether what the law already condemned, the court shall forbid; and the fact that its judgment adds to existing sanctions that of punishment for contempt, is not a circumstance to which a court will ordinarily lend a friendly ear." (quotation omitted)).

King Soopers also suggests that in the future the Board may improperly seek to avoid the administrative process by using the threat of contempt to dissuade King Soopers from defending other, unrelated charges. Not only is the argument speculative, contempt for such an unrelated act would be clearly outside the law and a charge against which King Soopers would have the opportunity to defend against in contempt proceedings.

In all other respects for which King Soopers argues enforcement is inequitable, we find that the Board's conclusions and actions are reasonably defensible and we will not

look behind their motivations in this case.

### III.  CONCLUSION

For the foregoing reasons, we **ENFORCE** the Board's Orders.  We **GRANT** King Soopers' motion to supplement the record.